UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN THOMAS DRICS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:14-cv-01192-SEB-MJD |
| | ) |
| TERRENCE P. DUFFY, | ) |
| LIONHART ADVISORS GROUP, LTD., | ) |
| PHOTON GLOBAL LTD., | ) |
| STARBRITE CAPITAL, INC., | ) |
| ARROW INVESTMENT MANAGEMENT | ) |
| INC., | ) |
| BOREALIS MANAGEMENT LIMITED, | ) |
| CALEDONIAN GLOBAL FINANCIAL | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS**

This matter comes before the Court on Defendants' Motion for Protective Order to Preclude Non-Parties' Deposition and Production of Documents [Dkt. 26] and Defendants' Expedited Motion for Protective Order Staying Deposition and Document Production of Jeffrey B. Abhe. [Dkt. 28.] For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions.

**I.     Background**

John Drics ("Plaintiff") sued Terence P. Duffy ("Duffy") and several companies controlled by Duffy, including Lionhart Advisors Group Ltd. ("Lionhart"), Photon Global Ltd. ("Photon"), Starbrite Capital Ltd. ("Starbrite"), Arrow Investment Management Inc. ("Arrow"), Borealis Management Ltd. ("Borealis"), and Caledonian Global Financial Services Inc.

("Caledonian") (collectively "Defendants"). He alleges fraud, conversion, breach of contract, and amount due on account. [Dkt. 1-1.]

Plaintiff claims Defendants employed him as legal counsel from 1997 to 2012, [*id.* ¶¶ 11-18], and owed him $345,950 dollars in legal fees at the time his relationship with Defendants ended. [*Id.* ¶ 20.] He identifies this amount as the "Accrued Amount." [*Id.*] Plaintiff also claims that in 2003, Duffy agreed to pay him a contingency fee of $619,000 for executing a merger of Barplats Investments Limited ("Barplats") and Eastern Platinum Limited ("Eastplats"). [*Id.* ¶ 21, 23.] Duffy, however, allegedly held this fee in abeyance and invested it in the defendant entities so that Plaintiff would have an incentive to provide quality legal services to those entities. [*Id.* ¶ 22, 23.] Plaintiff alleges that this amount was "recorded in the name of Drics on the books and records" of the defendant companies, [*id.* ¶ 24], and that he entrusted Duffy to manage the amount for purposes such as investing in a real estate development project called Montana Eagle, LLC. [*Id.* ¶ 43.] Plaintiff identifies this amount as the "Retained Amount." [*Id.* ¶ 23.]

The Court approved a Case Management Plan ("CMP") on August 29, 2014. [Dkt. 24.] In September, Plaintiff notified Defendants of his service of subpoenas on six non-parties, [Dkt. 27 at 3], including Jeffrey Ahbe, Nicholas Rego, Paul Abrahamsen, EDD Fund Services, Smarsh, Inc., and Blackrock, Inc. [*Id.* at 2.] Defendants considered the subpoenas improper, and Plaintiff and Defendants conferred but could not resolve the dispute. [*Id.* at 4-5.] On September 29, 2014, Defendants filed the current Motion for Protective Order to Preclude Non-Parties' Deposition and Production of Documents. [Dkt. 26.]

Defendants also filed an Expedited Motion for Protective Order Staying Deposition and Document Production of Jeffrey B. Ahbe. [Dkt. 28.] Plaintiff had scheduled Ahbe's deposition for October 3, 2014, and Defendant sought an expedited order to stay the deposition. [*Id.* at 2.]

Before the Court ruled on this motion, Plaintiff agreed with Ahbe's counsel to reschedule Ahbe's deposition for October 20, 2014. [Dkt. 31 at 1.] The Court conducted a hearing on the remaining motion for a protective order on October 14, 2014.

The subpoenas at issue request a broad array of financial information. The subpoena directed to Jeffrey Ahbe requests all documents and electronically stored information ("ESI") "pertaining to the distribution of any cash or other consideration" to the Defendants based on their business transactions with Eastplats, Eagle WorldWide Investments, or Muhlava Mining for the years 2005 through 2008; all documents and ESI submitted to "any applicable regulatory agency" with regard to Eastplats or Barplats for the years 2005 through 2008; all documents and ESI "with regards to amounts owed" to Ahbe by Defendants for the years 2005 through 2008; and all documents and ESI "with regards to amounts held by [Defendants] and owed to [Ahbe]." [Dkt. 27-2 ¶¶ 4-7.]

The Rego subpoena requests all communications, documents, and ESI related to "loans or mortgage documents, reflecting loans made to, between or among the named [parties];" "wire transfers sent or received by any of the named parties;" "preparation and finalization of audited financial statements for the business operations of any of the named parties;" "any submission to regulatory agencies or taxing authorities, for or on behalf of [Defendants or] Pyxis Securities, LLC;" and "any and all securities transactions in the name of [Defendants]." [Dkt. 27-3 at 7-11.] The Rego subpoena covers the years 2003 through 2009. [*Id.*] The Abrahamsen and EDD subpoenas request substantially the same information, but cover the years 2007 through 2011 and omit the reference to Pyxis Securities. [*See* Dkt. 27-4 & 27-5.]

The Smarsh subpoena requests for the years 2003 through 2009 all communications, documents, and ESI related to the business operations, securities transactions, banking

3

transactions, and submissions to regulatory or taxing authorities of Pyxis Securities. [Dkt. 27-6 at 7.] The Blackrock subpoena requests for the years 2003 through 2012 all communications, documents, and ESI relating to "any allocation or delegation of [Blackrock's] portfolio assets" pursuant to any investment agreement with Lionhart or Duffy. [Dkt. 27-7 at 7.]

## II. Legal Standard

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discoverable information includes that which is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, the "legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 224 (N.D. Ill. 1997).

"Although there is a strong public policy in favor of disclosure of relevant materials," *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Similarly, under Rule 26(b), the court "must limit the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). Before limiting discovery, "the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson*, 281 F.3d at 681 (internal quotation marks omitted).

When deciding whether to protect a person from a subpoena, "courts consider a number of factors, including the person's status as a non-party, the relevance of the discovery sought, the

subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (internal quotation marks omitted). Courts should "give special weight to the unwanted burdens thrust upon non-parties when balancing [the] competing needs" of discovery. *Id.* Further, any "party or attorney responsible for issuing and serving a subpoena **must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena**." Fed. R. Civ. P. 45(d)(1) (emphasis added).

### III. Discussion

Defendants advance two main arguments for their protective order. They claim the testimony and documents that Plaintiff seeks are irrelevant to any claims or defenses and are therefore beyond the permissible scope of discovery, [Dkt. 27 at 6], and they claim that the undue burden and expense of the proposed discovery outweigh its likely benefit.[1] [*Id.* at 11.]

Plaintiff calls Defendants' arguments conclusory and claims they do not satisfy Defendants' burden of showing specific hardship. [Dkt. 30 at 5.] Plaintiff also asserts that the information he requests is relevant to his claims because Duffy's financial affairs and investment decisions impacted the Retained Amount allegedly due to Plaintiff.[2] [Dkt. 30 at 6.]

---

[1] Defendants additionally allege that the requested discovery seeks "commercial information that is sensitive and valuable to the Defendants." [Dkt. 27 at 15.] This vague claim does not establish good cause for a protective order. *See, e.g., Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (requiring "specific examples of articulated reasoning" that "prove that disclosure will result in a clearly defined and very serious injury"). Further, the Court expects that any such concerns could be eliminated by a protective order providing for the confidential treatment of any such information that might be produced.

[2] Plaintiff also argues that Defendants failed to comply with the Court's CMP by moving for a protective order before requesting a conference with the Magistrate Judge. [Dkt. 30 at 4 (citing Dkt. 24 at 6).] Defendant, however, notes that Plaintiff violated Local Rule 45-1 by serving the subpoenas at issue on opposing counsel only one day before service on the subpoenees. [Dkt. 27-1; *see* S.D.Ind.L.R. 45-1 ("If a subpoena to produce or permit is to be served upon a nonparty, a copy of the proposed subpoena must be served on all other parties at least 7 days prior to service of the subpoena on the nonparty.").] The Court expects both parties to comply with the Court's orders and the Local Rules. Plaintiff, however, cannot invoke a violation of the CMP as grounds for dismissing Defendants' motions when it was Plaintiff's own violation of the Local Rules that left opposing counsel without sufficient time to request the CMP's required conference.

5

In reply, Defendants emphasize the breadth of Plaintiffs' requests and assert that this breadth demonstrates both lack of relevance and a substantial burden. [Dkt. 31 at 3-7.] They also argue that Plaintiff misstates which party bears the burden of proof. Because Defendants believe that Plaintiffs' requests do not appear relevant on their face, they argue Plaintiff has the burden to show why the Court should allow the discovery. [*Id.* at 3 & n.2.]

The Court first addresses the parties' burdens and then evaluates each of Plaintiff's subpoenas.

**1. The Parties' Burdens**

Plaintiff contends that Defendants, as the parties seeking a protective order, bear the burden of proof and must show a specific reason for denying the requested discovery. [Dkt. 30 at 5.] Defendants counter that Plaintiffs' requests are not facially relevant, such that Plaintiff bears the burden to show their relevancy. [Dkt. 31 at 3.]

Plaintiff is correct that the party moving for a protective order generally has the burden to show "good cause" for the order. *See, e.g.*, *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010) ("The party seeking a protective order bears the burden of proof to show that good cause exists for its issuance."); *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The party seeking a protective order has the burden to show good cause for it.").

However, "when the request is overly broad on its face, or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Vajner v. City of Lake Station, Indiana*. No. 2:09-CV-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010). Other courts have taken a similar approach. In *United Oil Co. v. Parts Associates*, *Inc.*, for instance, the court wrote that the burden is generally on "the party resisting discovery" to justify its objections, 227 F.R.D. 404, 411 (D. Md. 2005) (citing *Chavez v.*

*DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S. D. Ind. 2002)), but acknowledged that many courts nonetheless require a "threshold showing" of relevance when a request is not relevant on its face. *Id.* at 412 (collecting cases). In this case, then, Plaintiff has the burden to explain why any apparently irrelevant requests are actually relevant to a claim or defense in this action.

### 2. The Ahbe Subpoena

The Ahbe Subpoena first requests all documents and ESI "pertaining to the distribution of any cash or other consideration" to the Defendants based on their business transactions with Eastplats, Eagle WorldWide Investments, or Muhlava Mining for the years 2005 through 2008. [Dkt. 27-2 ¶ 4.] Plaintiff explained at the hearing that Ahbe was a financial advisor who worked with Duffy and Lionhart. [Protective Order Hr'g, Oct. 14, 2014, at 1:42.] Plaintiff also submitted emails between Defendants Duffy and Lionhart in which Ahbe was copied on matters relating to the transfer of $300,000 to Montana Eagle. [Dkt. 30-3 at 1-2.] This implies that Ahbe may have information that relates to Defendants' management of Plaintiff's Retained Amount. This information, in turn, could have implications for whether Defendants converted Plaintiff's funds or otherwise engaged in the conduct that Plaintiff alleges.[3] The request is thus "reasonably calculated" to lead to information relevant to Plaintiff's claims, Fed. R. Civ. P. 26(b)(1), and is within the appropriate scope of discovery.

At the hearing, Plaintiff also specifically explained that Muhlava Mining was a South African company in which Plaintiff believed the Retained Amount had been invested. [Hr'g at 1:55.] The alleged use of the Retained Amount for this purpose may exceed the scope of the

---

[3] To prevail on a claim for conversion of money under Indiana law, for instance, Plaintiff must show that the money was 1) identifiable as a "special chattel" and 2) was "entrusted [to Defendants] to apply to a certain purpose." *Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986). Plaintiff in this cases alleges that he entrusted Defendants to manage the Retained Amount for purposes such as investing in Montana Eagle. [Dkt. 1-1 ¶ 43.] Hence, Ahbe's information on whether Defendants actually did invest in Montana Eagle may be relevant to Plaintiff's claims.

7

purpose for which Plaintiff entrusted the funds to Defendant and therefore is relevant to Plaintiff's claims. *See Kopis*, 498 N.E.2d at 1270. Further, in tendering this explanation, Plaintiff has met his burden to show the relevance of the request. *Vajner*, 2010 WL 4193030, at *2.

The Court also finds that the scope of this request is not overly burdensome. Although Ahbe, as a non-party, is entitled to special protection from the burdens of litigation, *Parker*, 291 F.R.D. at 188, the Court notes that Plaintiff substantially limited his request: paragraph four asks only for documents and ESI related to transactions between the Defendants and Easplats, Eagle, and Muhlava Mining. [Dkt. 27-2.] As noted above, Eastplats was the source of the alleged Retained Amount [Dkt. 21-1 ¶ 21, 23]; Eagle was the entity in which Plaintiff allegedly entrusted Defendants to invest [*id.* ¶ 43]; and Muhlava was the entity in which Defendants may have invested without Plaintiff's consent. [Hr'g at 1:55.] The request therefore specifically focuses on transactions that are directly related to Plaintiff's claims. As such, the Court finds that factors such as the "relevance of the discovery sought" and the "breadth of the request," *Parker*, 291 F.R.D. at 188, justify allowing paragraph four of the subpoena. Further, the Court is mindful of the "strong public policy in favor of disclosure of relevant materials," *Patterson*, 281 F.3d at 681, and is inclined to allow paragraph four for this reason as well.

In contrast, the remaining paragraphs of the Ahbe subpoena lack strong justification. These paragraphs ask for all documents and ESI submitted to "any applicable regulatory agency" with regard to Eastplats or Barplats; all documents and ESI "with regards to amounts owed" to Ahbe by Defendants; and all documents and ESI "with regards to amounts held by [Defendants] and owed to [Ahbe]." [Dkt. 27-2 ¶¶ 5-7.]

The request for regulatory documents is not limited to Eastplats' or Barplats' dealings with Defendants, [*id.*], and thus sweeps in information unrelated to Plaintiff's Retained Amount.[4] Further, Plaintiff noted at the hearing that the regulatory documents were publicly available. [Hr'g at 1:59.] This reduces the need for Plaintiff to obtain the documents from Ahbe and leaves the Court disinclined to allow the request. *See Parker*, 291 F.R.D. at 188; *see also Lee v. City of Elkhart*, No. 2:12-CV-25-TLS-APR, 2013 WL 1754977, at *4 (N.D. Ind. Apr. 22, 2013) (quashing third-party subpoena where requesting party could obtain information from news stories in the public record).

The requests for information related to amounts owed to Ahbe by Barplats, Eastplats, Defendants, Eagle, or Muhlava Mining are also inappropriately broad. None of these requests is limited to Defendants' handling of Plaintiff's Retained Amount, [Dkt. 27-2 ¶¶ 5-6], and the requests thus encompass any number of other transactions between Ahbe, Defendants, and third parties that are unrelated to Plaintiff's claims. At the hearing, Plaintiff argued that Defendants made representations to Ahbe that were similar to those allegedly fraudulent representations Defendants made to Plaintiff. [Hr'g at 2:01] Plaintiff's complaint, however, is based on what Defendants told *Plaintiff*. [*See, e.g.*, Dkt. 72-2 ¶ 30 ("Duffy and the Duffy Entities continued to make representation *to Drics* with regard to the Retained Amount[.]") (emphasis added).] Plaintiff's allegations are not based what Defendants may have told Ahbe, and the Court thus finds that Plaintiff has not made a threshold showing of relevance for the information regarding amounts owed to Ahbe.

For these reasons, the Court will **GRANT** Defendant's motion to the extent that it asks to protect Ahbe from paragraphs five through seven of the subpoena. The Court, however, will

---

[4] Plaintiff conceded that none of the subpoenas are relevant to his claim for the Accrued Amount. [Dkt. 27 at 5.] Thus, any claim of relevance must be based on the Retained Amount.

**DENY** Defendant's motion insofar as it asks to protect Ahbe from paragraph four of the subpoena. The Court also notes that the protection from paragraphs five through seven will not prejudice Plaintiff's right to serve further discovery on Ahbe at a later date if Plaintiff can show, at that time, that the information he requests is relevant.

Finally, Defendants' motion asks the Court to "preclude the deposition of [Ahbe.]" [Dkt. 26 at 1.] Defendants' brief, however, addresses only the alleged burden and irrelevance of the requests for document production served on Ahbe. [Dkt. 27 at 6-7.] The Court therefore **DENIES** Defendants' motion with respect to Ahbe's deposition, and the deposition may proceed as scheduled.

### 3. The Rego Subpoena

Plaintiff's subpoena requests from Rego all communications, documents, and ESI related to loans made to, between, or among the parties; wire transfers by any of the named parties; preparation and finalization of audited financial statements for the businesses of the parties; any submission to regulatory agencies or taxing authorities, for or on behalf of Defendants or Pyxis Securities; and any and all securities transactions in the name of Defendants. [Dkt. 27-3 at 7-11.] The subpoena covers the years 2003 through 2009. [*Id.*]

The breadth of this subpoena is troubling. First, the transaction generating the Retained Amount closed in 2006, [Dkt. 1-1 ¶ 21], such that documents generated before that time are of dubious relevance. Second, the requests are in no way limited to the transactions allegedly generating the Retained Amount or resulting in Defendants' liability for allegedly mishandling the Retained Amount. Paragraph Eight, for instance, asks for wire transfers sent or received by any of the named parties, without regard for whether they have anything to do with the events giving rise to this litigation; likewise, Paragraph Thirteen asks for "any and all" securities

10

transactions in the name of Lionhart without regard for whether the transaction has any connection to this litigation. [Dkt. 27-3 ¶¶ 8, 13.] The breadth of these requests indicates Plaintiff does not know what information Rego might have that is relevant to his claims or defenses; rather, Plaintiff is fishing for anything that might, however unexpectedly, support his claims. Indeed, Plaintiff stated at the hearing that he did not know whether he had any interest in any of Lionhart's securities transactions. [Hr'g at 2:23.] Thus, it appears that he is simply casting a net into the air to see what he might find. In doing so, Plaintiff has gone beyond the permissible scope of discovery. *See Piacenti*, 173 F.R.D. at 224 (discouraging "fishing expeditions" despite broad scope of discovery); *see also Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858, at *3 (S.D. Ind. Jan. 21, 1999) (faulting third-party subpoenas where requesting party did not identify any "specific concerns or targets or reasons" for broad requests).

Plaintiff's attempt to justify the requests is also insufficient. At the hearing, Plaintiff identified Rego as a financial advisor for Pyxis Securities, [Hr'g at 2:07], and Plaintiff submitted documents indicating Pyxis Securities was a part owner of Montana Eagle, LLC. [Dkt. 30-6.] This suggests Rego may have information related to the alleged investment of Plaintiff's funds in Montana Eagle, but this does nothing to limit the broad scope of Plaintiff's requests. As written, the requests go far beyond any dealings with Montana Eagle, and Plaintiff did not carry his burden to make a threshold showing of relevance for these requests.

The Court further finds that the Rego subpoena does not comply with Rule 45. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Plaintiff in this case has not done so. As described above, Plaintiff does know which (if any) of the financial transactions in which Rego has been involved are relevant to Plaintiff's

claims. To avoid subjecting Rego to overly broad requests, Plaintiff should determine which transactions are pertinent to his claims and then narrow his requests to those transactions. Although Plaintiff correctly notes that he need not sequence his discovery in any particular order, [Dkt. 30 at 3-4; Fed. R. Civ. P. 25(d)(2)], the Court finds that Plaintiff's failure to engage in *any* party discovery that might narrow his requests to Rego does not comply with Rule 45(d)(1)'s requirement that he "must take reasonable steps to avoid imposing undue burden or expense" on the non-party. *See, e.g.*, *Builders Ass'n of Greater Chicago v. City of Chicago,* No. 96 C 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002) (finding Rule 45 breach when there was "no indication that the [party] attempted to tailor its subpoenas" to the "nature of the recipients" or the information the recipient might have).

Plaintiff, for instance, could conduct party discovery before attempting to subpoena Rego. Plaintiff alleges that Defendants have claimed they have no records of Plaintiff's Retained Amount, [Dkt. 1-1 ¶ 28], but Plaintiff has not yet served any discovery on Defendants. [Dkt. 27 at 12.] Plaintiff may find that Defendants' answers to interrogatories or other discovery responses made under oath, *see, e.g.*, Fed. R. Civ. P. 33(b)(3), and subject to Fed. R. Civ. P. 11 sanctions, may reveal more information about the relevant financial transactions than Defendants' alleged denial of records. This, in turn, would obviate the need for non-party subpoenas or at least allow Plaintiff to more narrowly tailor his non-party subpoenas, thereby complying with Rule 45's mandate to limit the burden on non-parties. Additionally, requiring party discovery before non-party discovery is consistent with the procedures courts have employed in the past. *See, e.g.*, *Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, No. 06-1236, 2008 WL 724798, at *4 (C.D. Ill. Mar. 17, 2008) (directing plaintiff to make an initial request for documents from defendants before subpoenaing third parties to obtain similar documents).

12

The Court will accordingly **GRANT** Defendant's motion with respect to the Rego subpoena and will preclude Plaintiff from seeking to enforcing the subpoena at this time. This prohibition, however, will not prejudice Plaintiff's right to subpoena Rego if Plaintiff both takes "reasonable steps," Fed. R. Civ. P. 45(d)(1), to avoid burdening Rego and can show that the request to Rego seeks relevant information.

### 4. The Abrahamsen Subpoena

The Abrahamsen subpoena requests substantially the same information as the Rego subpoena, but covers the years 2007 through 2011. [*See* Dkt. 27-4.] This subpoena on its face thus suffers from many of the same flaws as the Rego subpoena in that it requests information on loans, wire transfers, submissions to regulatory authorities, and transactions that have no apparent connection to this case.

At the hearing, the Court asked what relevance the requested information had to Plaintiff's claims. Plaintiff explained that Abrahamsen was a member of Montana Eagle and that he had "intimate" knowledge of Defendants' cash transfers and financial affairs. [Hr'g at 2:31; 2:34.] Plaintiff also submitted exhibits supporting this statement. [*See* Dkt. 30-6 at 4 (listing Abrahamsen as indirect owner of Montana Eagle); Dkt. 30-3 at 2 (identifying Abrahamsen and Defendant Duffy as planned members of Montana Eagle).] Because Plaintiff alleges that his Retained Amount was specifically entrusted to Defendants for investment in Montana Eagle, [Dkt. 1-1 ¶ 43], and because Abrahamsen was a member of Montana Eagle, the Court finds it likely that Abrahamsen has information relevant to Plaintiff's claims.

Plaintiff, however, could not explain how any transactions *other* than those related to Montana Eagle were relevant to his claims. [Hr'g at 2:34.] In fact, Plaintiff stated that he had no information indicating that his Retained Amount was invested anywhere other than Montana

13

Eagle. [Hr'g at 2:42.] Again, then, Plaintiff is fishing for transactions of an unknown nature that may or may not exist, without any "specific concerns or targets or reasons," *Perry*, 1999 WL 33494858, at *3, for his broad requests.

In light of the above, the Court will limit the Abrahamsen subpoena to documents, communications, and ESI related specifically to Montana Eagle, LLC. Plaintiff may demand from Abrahamsen that information that relates to Montana Eagle, but the Court will otherwise **GRANT** Defendant's motion to protect Abrahamsen from the subpoena.

This initial limitation does not prejudice Plaintiff's right to subpoena additional documents at a later date. Plaintiff, however, must first take "reasonable steps" to ensure any additional subpoenas do not unduly burden Abrahamsen with broad requests for information of questionable relevance. As with the Rego subpoena, conducting party discovery prior to serving any additional discovery on Abrahamsen may be appropriate.

5. **The EDD Subpoena**

The subpoena served on EDD Fund Services requests substantially the same information as the Rego subpoena, but covers the years 2007 through 2011. [*See* Dkt. 27-5.] At the hearing, Plaintiff agreed to withdraw the requests in paragraphs seven through eleven of the EDD Subpoena. [Hr'g at 2:49.] Thus, Plaintiff no longer seeks from EDD information related to Defendants' loans, wire transfers, regulatory submissions, or audited financial statements. [Dkt. 27-5 ¶¶ 7-11.]

Plaintiff, however, still seeks the information requested in paragraphs twelve through seventeen, which ask for information related to securities transactions in the names of the named Defendants, [*id.* ¶¶ 12-16], or in the name of Montana Eagle. [*Id.* ¶ 17.] By limiting these requests specifically to Defendants or to the entity in which Defendants allegedly invested

Plaintiff's funds, Plaintiff has narrowed the requests in a way that makes them potentially less burdensome on EDD and more likely to contain relevant information. Additionally, Plaintiff asserted that EDD conducted the "bookkeeping" and accounting for "transactions and cash movements" for Defendants. [Hr'g at 2:44.] It is therefore likely that EDD has information that could support Plaintiff's claims, and the Court thus finds that factors such as the relevance of the discovery sought, the (relatively narrow) breadth of the request, and the (relatively limited) burden on the subpoenaed party, *Parker*, 291 F.R.D. at 188, support allowing this portion of the subpoena.[5]

Moreover, Plaintiff stated at the hearing that EDD specifically tracked Defendants' securities transactions. [Hr'g at 2:44.] By withdrawing paragraphs seven through eleven of the subpoena, Plaintiff has limited the EDD subpoena only to information related to such securities transactions. [*See* Dkt. 27-5.] Hence, Plaintiff has now "tailored" his subpoena "to the nature of the recipient" and the information the recipient is likely to have in a way that complies with Rule 45(d)(1). *See, e.g.*, *Builders Ass'n of Greater* Chicago, 2002 WL 1008455, at *4. The Court therefore **DENIES** Defendant's motion insofar as it asks to protect EDD from the portions of Plaintiff's subpoena that have not been withdrawn.

### 6. The Smarsh and BlackRock Subpoenas

Plaintiff withdrew the Smarsh and BlackRock subpoenas during the course of the hearing. [Hr'g at 2:30; 2:56.] The Court therefore **DENIES AS MOOT** Defendant's motion to the extent that it requests protection for these parties.

---

[5] This ruling does not preclude EDD (or any of the other non-parties for that matter) from raising their own objections to the burdensomeness of Plaintiff's requests.

### 7. Defendant's Expedited Motion

As noted above, Defendants filed an Expedited Motion for Protective Order Staying Deposition and Document Production of Jeffrey B. Ahbe, [Dkt. 28], asking to stay the Ahbe deposition while the Court considered Defendants' other motion. [*Id.* at 1.] Plaintiff, however, agreed to reschedule Ahbe's deposition for a later date. [Dkt. 31 at 1.] The Court therefore **DENIES AS MOOT** Defendant's expedited motion.

### IV.    Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Protective Order to Preclude Non-Parties' Deposition and Production of Documents, [Dkt. 26], and **DENIES AS MOOT** Defendants' Expedited Motion for Protective Order Staying Deposition and Document Production of Jeffrey B. Ahbe. [Dkt. 28.] Plaintiff may proceed with non-party discovery to the extent set out above, but otherwise may not attempt to enforce the non-party subpoenas. Plaintiff shall advise the nonparties that the date for their response to the subpoenas is enlarged to and including **November 12, 2014**. Plaintiff may, at a later date and upon a showing of compliance with Rule 45, seek further discovery of the non-parties described above.

Dated: 10/16/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Braden James Tilghman
DECHERT LLP
braden.tilghman@dechert.com

Erik William Snapp
DECHERT LLP
erik.snapp@dechert.com

John Thomas Drics
DRICS & ASSOCIATES
john.drics@drics-law.com